**ORDERED** that Parcel No. 21 Dronningens Gade Queen's Quarter shall have a value of $1,680,000.00 for its 1999 tax bill, and a value of $1,590,000.00 for its 2000 tax bill; and it is further

**ORDERED** that these values and their associated tax liabilities shall remain in effect until such time as the Special Master certifies that the Territory's property tax system will produce credible and reliable actual values.

**UNITED STATES of America**

v.

**Steward HINCH**

**No. CRIM. RDB 03–0567.**

United States District Court,
D. Maryland.
Northern Division.

March 16, 2004.

Thomas M DiBiagio, Baltimore, MD, Jonathan Mastrangelo, Office of the United States Attorney, Baltimore, MD, for plaintiff.

Randolph O Gregory, Sr., Randolph O Gregory PA, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

BENNETT, District Judge.

The Court having held a hearing on the Defendant's Motion to Dismiss Indictment with Prejudice for the Government's Failure to Comply with 18 U.S.C. § 3161(b), and for the reasons stated on the record and the reasons that follow, the Court granted the Defendant's Motion to Dismiss the Indictment, but denied his request that the dismissal be with prejudice. The Court issued an Order dismissing the indictment without prejudice.

### Background

On November 18, 2002, the Government charged the Defendant, Steward A. Hinch, by complaint with stealing in excess of $1,000 from the United States in violation of 18 U.S.C. § 641 during the period March 1998 through April 2002, in connection with the Defendant's employment at the Ruggles Golf Course at Aberdeen Proving Ground, which is administered by the United States Department of Defense, an agency and department of the United States. The Defendant was arrested and brought before this Court for an initial appearance on November 26, 2002, at which time he was released subject to limited conditions. On December 18, 2003, the Defendant was charged by indictment with stealing in excess of $200,000 from the United States during the period between October 1, 1997 and April 17, 2002, in violation of 18 U.S.C. § 641, in connection with his employment at the Ruggles Golf Course at Aberdeen Proving Ground. The indictment was filed one year and twenty-three days after the Defendant's initial appearance on the criminal complaint.

### Analysis

The Defendant argued that the indictment should be dismissed with prejudice for the Government's failure to comply with section 3161(b) of the Speedy Trial Act, 18 U.S.C. §§ 3161—3174. That section provides in pertinent part that "[a]ny ... indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested ... in connection with such charges." 18 U.S.C. § 3161(b). The Act further provides that

[i]f, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment ... is filed within the time limit required by section 3161(b) ... such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of the reprosecution on the administration of this chapter and the administration of justice.

18 U.S.C. § 3162(a)(1). As a threshold matter, a reviewing court must determine whether a violation of the Act occurred. If it finds that a violation occurred, the court then must determine whether dismissal of the indictment with or without prejudice is warranted.

### A. *Violation of 18 U.S.C. § 3161(b)*

■ Based upon the parties' submissions, the Court determined at the hearing that the 2002 arrest and criminal complaint related to the same offense that is the subject of the December 2003 indictment. The Government noted that the scheme charged in the indictment involved a slightly longer time period and a greater sum of money. However, both the complaint and the indictment charged the Defendant with a complicated theft scheme during the period of time that the Defendant supervised the Pro Shop for the Ruggles Golf Course at Aberdeen Proving Ground. Furthermore, both alleged a violation of 18 U.S.C. § 641, which involves the theft of greater than $1,000 from the United States. The fact that the Government's investigation later suggested that the Defendant had operated the scheme from October 1997 instead of March 1998 (and consequently was able to convert a greater amount) was of no particular consequence to the Court's determination that § 3161(b) was implicated by the filing of the indictment in this case.

■ The Government took the position, however, that dismissal was not warranted, because the Defendant waived his right to be indicted within the thirty-day period prescribed by 18 U.S.C. § 3161(b). In support of its contention, the Government submitted two memoranda prepared by Special Agent Kenneth Rufo of the Federal Bureau of Investigation memorializing two conversations with Assistant United States Attorney James Howard. The first memorandum, dated December 17, 2002, documented various "current developments" in the case, including the Defendant's waiver of the preliminary hearing. In that memorandum, Rufo specifically noted that the Government had until December 26, 2002 to bring an indictment against the Defendant. The second memorandum, dated January 8, 2003, stated that on December 26, 2002, Howard contacted the Defendant's attorney, Randolph Gregory, Esquire and that Gregory agreed to waive the Speedy Trial Act's thirty-day requirement with respect to the indictment. The Government was unable to offer any other documentation of the alleged waiver. In particular, the Government offered no correspondence between Howard and Gregory memorializing the alleged waiver. The Government did offer a facsimile cover sheet from Howard to Gregory dated December 13, 2002 attaching the Defendant's FBI interview reports, suggesting some cooperation between the parties with respect to discovery. However, the latter document made no mention of any alleged waiver and was not necessarily indicative of an anticipated waiver by the Defendant. Moreover, Gregory stated that he had no recollection of making any waiver with respect to the indictment.

The question of compliance with, or violation of, § 3161(b) thus was reduced to a factual question of whether Gregory verbally waived the Speedy Trial Act in a conversation with AUSA Howard. Because the Government offered no evidence other than Special Agent Rufo's memorandum to the file, made thirteen days after the alleged conversation between Gregory and Howard took place, it did not sustain its burden of proving a waiver. Accordingly, the Court concluded at the hearing that § 3161(b) had been violated.

■ Further support for that holding is provided by existing Fourth Circuit precedent, which holds that, because the Act protects not only the defendant's interest, but also the public's interest in speedy justice, a defendant cannot waive his right to a speedy trial. *United States v. Keith*, 42 F.3d 234, 238 (4th Cir.1994)("The reasoning behind this general rule rests on the notion that a defendant cannot waive the public's interest in a speedy trial.").[1]

At the hearing, the Government cited cases from the First and Seventh Circuits in support of its position that the period of time from Gregory's alleged waiver to the filing of the indictment was excludable from the thirty-day period. Those cases, *United States v. Pringle*, 751 F.2d 419 (1st Cir.1984), and *United States v. Kucik*, 909 F.2d 206 (7th Cir.1990), carve out an exception to the general rule to prevent a defendant "from taking advantage of the discrete period of time covered by a continuance occasioned by a defendant's consent and/or waiver." *Keith*, 42 F.3d at 238. *Kucik* involved a "period of less than two weeks," and the court found that "[w]here a defendant actively participates in a continuance covering a discrete period of time ... he cannot then 'sandbag' the court and the Government by counting that time in a speedy trial motion." 909

F.2d at 211. In *Pringle*, the Seventh Circuit remanded the case to the district court for a determination of the reason for a delay totaling over four months for a finding as to whether such time was "excludable." Both cases are distinguishable from this case. No evidence was presented at the hearing indicating any activity by the Defendant leading to the delay in the indictment of over one year.

Moreover, the Fourth Circuit in *Keith* articulated a more narrow standard by holding that, if the reason for the continuance agreed to by the defendant supports an ends of justice finding under 18 U.S.C. § 3161(h)(8)(A), the defendant may not use that time to obtain a dismissal under the Act. *Keith*, 42 F.3d at 240. Otherwise, the time is non-excludable. *Id.* In the case *sub judice*, the Government failed to adduce evidence that the Defendant consented to a continuance, and, therefore, its reliance on the precedent cited at the hearing was misplaced.

In light of the Fourth Circuit opinion in *Keith*, as well as its opinion in *United States v. Iaquinta*, 674 F.2d 260 (4th Cir. 1982), the record in this case reflected a clear failure on the part of the Government to comply with the requirements of 18 U.S.C. § 3161(b). Accordingly, this Court was compelled to conclude that the thirty-day provision of the statute had been violated.

## B. *Dismissal With or Without Prejudice*

■ The decision to dismiss an indictment with or without prejudice is a matter reserved to the discretion of the Court, and neither remedy is presumptively mandated by the Speedy Trial Act. *United States v. Taylor*, 487 U.S. 326, 334–35, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988). In

---

1. A defendant, however, may waive his right to dismissal if he fails to move for dismissal prior to trial or entry of a guilty plea. *See* 18 U.S.C. § 3162(a)(2).

addition to the four factors listed in 18 U.S.C. § 3162(a)(1), (1) the seriousness of the offense, (2) the facts and circumstances of the case which led to the dismissal, (3) the impact of reprosecution on the Speedy Trial Act, and (4) the impact of reprosecution on the administration of justice generally, the Supreme Court has recognized that a fifth factor, prejudice to the defendant, is relevant for a district court's consideration. *Taylor,* 487 U.S. at 333–34, 108 S.Ct. 2413. This Court has noted these factors in *United States v. Scott,* 743 F.Supp. 400 (D.Md.1990), a similar case involving a violation of 18 U.S.C. § 3161(b). *See id.* at 404.

■ With respect to the first factor, the seriousness of the crime, the Government noted in its written memorandum that this case "involves a complicated theft scheme executed by the defendant" and that the "[i]nvestigators have had to piece together transactions that occurred over several years—reviewing thousands of pages of register machine tapes and internal reports—to uncover the means employed by Hinch ...." Gov't. Mem. at 5. The indictment alleged that the Defendant embezzled in excess of $200,000 during the period of time that he supervised the Pro Shop for the Ruggles Golf Course at Aberdeen Proving Ground. The Defendant conceded at the hearing that this factor weighed in favor of the Government, and this Court so found.

With respect to the second factor, the facts and circumstances of the delay in this case, the Defendant speculated that the delay of more than one year between the dates of the initial appearance and indictment was caused by administrative neglect, not bad faith on the part of the Government. The Government argued, without introducing any testimony, that AUSA Howard acted pursuant to a good faith belief that the Defendant had waived his right to a speedy trial. However, as

Judge Kaufman noted in *Scott,* "the mere lack of improper motive is not a sufficient excuse for a speedy trial delay." 743 F.Supp. at 406 (quoting *United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir.1984))(internal quotation marks and brackets omitted). "Some affirmative justification must be demonstrated to warrant a dismissal with prejudice." *Id.* Accordingly, at the hearing, the Government identified its ongoing efforts during the 388–day period to uncover the scope of the Defendant's scheme. Between November 26, 2002 and December 18, 2003, the FBI conducted 37 witness interviews. The grand jury received testimony on two occasions. Three auditors were engaged in identifying the suspicious transactions and calculating loss amounts. The Government argued that the nature of the Defendant's alleged theft ranged from taking money from the register to manipulating daily activity reports to characterizing membership fee payments as purchases of merchandise, manipulating the membership system, and converting the merchandise for his own use. Because this appeared to be a classic case of the Government arresting the Defendant and then suffering an administrative lapse as it discovered the complexity of the scheme, the Court found itself in a state of even balance as to whether this factor favored the Government or the Defendant.

With respect to the third factor, the effect of reprosecution on the administration of the Act, the Court found that it weighed in favor of the Defendant. The Government argued in its memorandum that one of the central purposes of the Speedy Trial Act is to mitigate the risk of oppressive pretrial incarceration. *See United States v. Grimmond,* 137 F.3d 823 (4th Cir.1998). The Government argued that that risk was non-existent in this case, because the Defendant had been released subject to minor conditions during the one-

year period between the initial appearance and the indictment. However, in *United States v. Jones*, 602 F.Supp. 1045 (E.D.Pa. 1985), the United States District Court for the Eastern District of Pennsylvania noted that one of the purposes of the Act is to redress administrative mix-up or neglect on the part of the Government. "To dismiss the indictment against the defendant without prejudice would contravene the purpose of the Act by condoning a lengthy delay caused by the fact that the case was lost in the shuffle when the Act was intended to provide orderly and expeditious federal criminal prosecutions." *Id.* at 1051. The Court found that allowing reprosecution in this case would similarly undermine the purpose of the Speedy Trial Act. However, the Court felt compelled to balance the five factors before reaching its conclusion.

The Defendant conceded at the hearing that the fourth factor, the impact of reprosecution on the administration of justice, favored the Government. The Court found that, in this case involving allegations of the theft of more than $200,000 of Government funds and property using sophisticated means, a dismissal with prejudice clearly would have a negative impact on the administration of justice and provide no recourse to the Government with respect to the alleged offense. In light of the significant amount of money alleged to be involved, this factor weighed in the Government's favor.

Finally, with respect to the fifth factor identified in *Taylor* and *Scott*, the prejudice to the Defendant, the Defendant conceded that no witnesses or evidence had become unavailable as a result of the delay. There was absolutely no evidence of any prejudice to the Defendant, as he remained on release during the entire one-year period of the delay. Therefore, this factor weighed in the Government's favor.

### Conclusion

This Court held a hearing on the Defendant's Motion to Dismiss the indictment and found that there was a clear violation of the Speedy Trial Act and its mandates, as set forth in 18 U.S.C. § 3161(b). Having determined that a violation of the Act occurred, the Court conducted the analysis required by 18 U.S.C. § 3162(a)(1) and found that a majority of those factors weighed in favor of the Government. Accordingly, the Court dismissed the indictment without prejudice.

### ORDER

The Court having held a hearing on the Defendant's Motion to Dismiss Indictment with Prejudice for the Government's Failure to Comply with 18 U.S.C. § 3161(b), and for the reasons stated on the record and the reasons set forth in the attached Memorandum Opinion, it is this _____ day of March, 2004

HEREBY ORDERED, that the Defendant's Motion is GRANTED; and

IT IS FURTHER ORDERED, that the Defendant's request that the dismissal be with prejudice is DENIED and that said dismissal is WITHOUT PREJUDICE.